Katherine G. Rubschlager (State Bar No. 328100)
**ALSTON & BIRD LLP**
1950 University Avenue, Suite 430
East Palo Alto, CA  94303
Telephone:      650-838-2000
Facsimile:      650-838-2001
E-mail: katherine.rubschlager@alston.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.R., by and through her Guardian ad Litem Tiffany Roe,<br><br>          Plaintiff,<br><br>     v.<br><br>Elk Grove Unified School District, Capitol Elementary School, Inc.,<br>Marilyn Delgado, and Ira Ross,<br>as individuals, and DOES 1 through 10,<br><br>          Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1.  Violation of the Americans With Disabilities Act, 42 U.S.C. § 12131 et. seq.<br>2.  Violation of the Americans With Disabilities Act, 42 U.S.C. § 12181 et. seq.<br>3.  Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794<br>4.  Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681<br>5.  Violation of the Unruh Civil Rights Act, California Civil Code § 51 et. seq.<br>6.  Negligent Failure to Perform Mandatory Duties under Government Code §§ 815.6 and 820 Including Negligent Supervision.<br><br>**DEMAND FOR JURY TRIAL** |

COMES NOW Plaintiff, C.R. ("Plaintiff"), who files this complaint by and through her *guardian ad litem* Tiffany Roe, is informed and believes and thereon alleges as follows:

**THE PARTIES**

1.      Plaintiff is a minor and resident of Sacramento County, in the State of California. Accordingly, an Application and Order for Appointment of Guardian Ad Litem requesting that Tiffany Roe, Plaintiff's legal guardian and grandmother, be appointed as her *guardian ad litem* in the United States District Court for the Eastern District was filed contemporaneously with this lawsuit. To protect her privacy Plaintiff has been identified herein as C.R. and her grandmother as Tiffany Roe.

2.      At the time of the majority of the incidents giving rise to this action, Plaintiff was a minor and special education student entrusted to the care of Defendant Elk Grove Unified School District ("EGUSD" or "district") and Capitol Elementary School, Inc. ("Capitol Elementary School or "CES").

3.      At all times herein mentioned, Capitol Elementary School is a non-public school, organized as a private corporation, under the laws of the State of California, which contracts with various school districts and County offices of Education and SELPAs [Special Education Local Plan Area], including EGUSD and the California Department of Education ("CDE"), to act as an independent contractor in providing education services to disabled children within the State of California. At all times herein mentioned, in committing the acts herein alleged, CES was performing services on behalf of those state educational entities.

4.      At all times herein mentioned, EGUSD is a local government entity with the meaning of Title II of the ADA, a recipient of federal assistance within the meaning of Section 504 of the Rehabilitation Act and has at least 50 employees.

5.      Defendant EGUSD is a public entity within the meaning of California Government Code sections 811.2 and 900 *et seq.* and is duly incorporated and operating under California law as a school district. The state of California apportions funds to EGUSD pursuant to a Local Control Funding Formula (LCFF). Although the balance between sources fluctuates slightly from year to year, the federal government provides approximately five percent of this funding. At all times herein

mentioned, Defendant EGUSD had the responsibility of providing Plaintiff with full and equal access to a public education in compliance with federal and state laws and regulations.

6.     Defendant CES is a state certified non-public school.  On information and belief, EGUSD and CES annually enter into a Master Contract, for the purpose of providing special education and/or related services to students with exceptional needs under the authorization of California Education Code sections 56157, 56361 and 56365 et seq. and Title 5 of the California Code of Regulations section 3000 et seq., AB490 (Chapter 862, Statutes of 2003) and AB1858 (Chapter 914, Statutes of 2004).

7.     On information and belief, EGUSD pays CES the full amount of tuition for individuals with exceptional needs that are enrolled in programs provided by the CES pursuant to the Master Contract.

8.     At the time herein mentioned, Defendants had the responsibility of providing Plaintiff with full and equal access to a public education in compliance with federal and state laws and regulations.

9.     Defendant Marilyn Delgado ("Delgado"), at all times herein mentioned, was employed as the Cross Region Program Specialist of Non-Public Schools for EGUSD. Cross Regional Program Specialists are responsible for the support and administration of district-wide programs. For these district-wide programs, the Cross Regional Program Specialists work with teacher and paraeducator staffing, student placements, site placement of classrooms, acquiring equipment, budgeting, certifications and the like.  Ms. Delgado has known and worked with Plaintiff for many years. As Program Specialist for EGUSD's Non-Public schools, Ms. Delgado was responsible for the placement, education, and supervision of students at Non-Public schools, including CES. Ms. Delgado additionally had the authority to investigate and take corrective measures on behalf of EGUSD.  On information and belief, Ms. Delgado was also responsible for ensuring compliance with state and federal laws pertaining to the provision of special education and/or related services, behavior interventions, supervision, and training. All actions alleged herein by Ms. Delgado were taken under color of state law and in the course of her employment with EGUSD and/or DOES 1 through 10.

10.     Defendant Ira Ross ("Ross"), at all times herein mentioned, was employed as the Executive Director and/or Principal of CES, located in the County of Sacramento, State of California. As the Principal of CES, Defendant was responsible for the hiring, training, and supervision of CES staff. Defendant Mr. Ross additionally had the authority to investigate, discipline, and take corrective measures on behalf of CES. On information and belief, Mr. Ross was also responsible for ensuring compliance with state and federal laws pertaining to the provision of special education and/or related services, behavior interventions, supervision, and training. All actions alleged herein by Mr. Ross were taken under color of state law and in the course and scope of his employment with CES and/or DOES 1 through 10.

11.     Plaintiff alleges that at all relevant times, DOES 1 through 10 were the employees, agents, officers and/or directors of EGUSD and/or CES, and were acting within the scope of their employment with EGUSD and/or CES or in an official capacity. Pursuant to California Government Code sections 815.2 and 820, EGUSD and CES are liable for the acts and omissions of its employees that are within the course and scope of employment. *Dailey v. Los Angeles Sch. Dist*., 2 Cal.3d 741, 747 (1970).

12.     The true names and capacities, whether individual, corporate, partnership, joint venture, or otherwise of Defendant DOES 1 through 10, inclusive, are unknown to Plaintiff who therefore sues Defendants by such fictitious names. When the true names and capacities of DOES 1 through 10 are ascertained, Plaintiff will seek leave to amend this Complaint by inserting their true names and capacities herein.

13.     Plaintiff alleges that during the relevant times referenced herein, each of the Defendants sued herein was the agent, servant, employee, joint venture, partner, division, owner, subsidiary, alias, assignee, and/or alter-ego of each of the remaining Defendants, and was acting within the purpose, scope, course, and authority of such agency, servitude, employment, joint venture, partnership, division, ownership, subsidiary, alias, assignment, alter-ego, and with the authority, consent, approval, and ratification of each remaining Defendant.

14.     Plaintiff alleges that each of the named Defendants and fictitiously named Defendants are legally responsible in some manner for the occurrences alleged herein, and that the injuries as alleged herein where proximately and legally caused by the acts and/or omissions of such Defendants.

## JURSIDICTION AND VENUE

15.     This court has original jurisdiction over Plaintiff's claims for relief pursuant to 28 U.S.C. section 1331 and 28 U.S.C. § 1343(a)(3).  This court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

16.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because EGUSD and CES have their principal place of business and operation in this jurisdictional area, Plaintiff and the remaining Defendants reside and/or work in this jurisdictional area, and because the obligations and liabilities of all Defendants and/or DOES 1 through 10, inclusive, arise therein.

## FACTS COMMON TO ALL COUNTS

17.     Plaintiff is a minor who was diagnosed with Autism when she was only a few years old.  As a condition of her Autism, Plaintiff has difficulty with social engagement, including but not limited to, the ability to (a) understand social cues, (b) understand right from wrong, and (c) communicate internal emotions and conflict.  Additionally, as a condition of her Autism, Plaintiff is substantially limited in several major life activities including, but not limited to, reading, thinking, caring for herself, communicating, speaking and concentrating.

18.     Plaintiff has also been diagnosed with fetal alcohol syndrome which has resulted in developmental disabilities.

19.     EGUSD moved Plaintiff to CES after her previous school, Guiding Hands School in El Dorado Hills, closed on January 25, 2019.  When Guiding Hands School closed, EGUSD offered Plaintiff two options for school: CES or a school in Lodi, California. Lodi, California is roughly an hour away from Sacramento, California, which essentially forced Plaintiff's grandmother to enroll Plaintiff at CES.  Plaintiff's grandmother visited CES before enrolling Plaintiff in the school. CES staff assured Plaintiff's grandmother that they were equipped to provide educational services to children with Autism and other developmental conditions.

20.     While Guiding Hands specialized in educating children with Autism, CES, as Plaintiff's grandmother came to learn, specializes in educating children who generally have emotional and behavioral difficulties that affect their learning.  This includes children with disabilities and non-disabled children who have behavioral issues in a traditional educational setting.  There were roughly 14 males and 2 other females in Plaintiff's seventh grade class at CES.

21.     Upon information and belief, there were other disabled students placed at CES by EGUSD after Guiding Hands closed. Upon information and belief, some of these students have also been sexually harassed and/or assaulted at CES.

22.     The specific incidents giving rise to this lawsuit occurred between 2019 and 2020 while Plaintiff was enrolled as a special education student at CES.  The repetitive nature of these incidents insinuates a pattern and practice of discrimination against Plaintiff, on account of her disability, and complete indifference by Defendants toward her sexual harassment and assaults.

**A.      Plaintiff Fell Victim to Repeated Sexual Abuse as Result of Defendants' Total Indifference Toward Her on Account of Her Disability**

23.     On or about September 4, 2019, two boys in Plaintiff's class, whose names have been withheld to maintain their confidentiality, told Plaintiff that they "wanted to put their dick into her ass."  Upon learning of this, Plaintiff's grandmother reported the incident to CES.  In response, CES told Plaintiff's grandmother that they did not see or hear anything.

24.     On or about September 11, 2019, Plaintiff told her grandmother that she didn't like going to school.  Plaintiff informed her grandmother that the same two boys were again talking nasty to her and touching Plaintiff's body.  The boys grabbed Plaintiff's breasts when the teacher was not looking.  The boys surrounded Plaintiff and told her what sexual acts they wanted to do to her.  When Plaintiff tried to fight them off, the boys threatened to harm her.  Moreover, when Plaintiff told her teacher, Plaintiff's teacher told Plaintiff to not go near the boys and to just ignore them.

25.     Defendants did not investigate this incident or even bother to contact Plaintiff's grandmother to inform her of what had occurred.  Instead, it was Plaintiff's grandmother who, yet again, had to contact CES.  Especially given that the same two boys had harassed Plaintiff just a few days prior, Plaintiff's grandmother reported the incident to CES.  Without conducting an actual

investigation into the incident as was required, CES again told Plaintiff's grandmother that they did not see or hear anything.

26.    On or about September 20, 2019, Plaintiff was allowed to use a restroom without adult supervision.  Upon information and belief, CES staff allowed boys and girls to use the same bathroom at the time.  While using the restroom, the same two boys came into Plaintiff's bathroom stall and fondled her.   When Plaintiff's grandmother later found out about the incident, she immediately reported it to CES.  CES denied that the incident could have ever occurred because a monitor stands outside of the restroom.  Plaintiff's grandmother asked CES, "Why are they using the same bathroom, especially if they are in Junior High?"   CES seemed frustrated by Plaintiff's grandmother's concerns and was not responsive to her questions.

27.    Despite being informed of yet another troubling incident, CES did not conduct any investigation or otherwise implement any corrective safety measures as Defendants would have done had Plaintiff not been a disabled student who had difficulty expressing the harm that was being done.

28.    On or about October 1, 2019, Plaintiff began crying, telling her grandmother that she was tired of the two boys touching her breasts and buttocks.  Plaintiff's grandmother called CES and left a message.  No one at CES returned her call.  Plaintiff's grandmother called CES again and was told by the receptionist that CES was looking into it.

29.    Despite being informed of yet another assault by the same assailants, CES did not follow up with Plaintiff's grandmother, nor did CES conduct any investigation or otherwise implement any corrective safety measures as Defendants would have done had Plaintiff not been a disabled student who has difficulty expressing the harm that was being done.

30.    On October 29, 2019, Plaintiff's grandmother requested an individual education plan ("IEP") meeting to address concerns she had with Plaintiff's education.  An IEP meeting, required by the IDEA 20 U.S.C. § 1415, is convened at least once a year to plan, review, revise, and update a special education student's IEP.  Plaintiff's grandmother was concerned that Plaintiff was not learning at CES. For example, Plaintiff complained that school was "too easy" and Plaintiff never had homework even though she was learning at a 6th to 7th grade level.  Plaintiff's grandmother was also very concerned about the ongoing sexual assaults.

31.     On November 5, 2019, an IEP meeting was held at Capitol Elementary. Cora V., the EGUSD school psychologist, Marilyn Delgado, the EGUSD Program Specialist, Ms. Roberts, the NPS Admin, Mr. Billie, an OT, Mr. Grand, the special education teacher, and Plaintiff's grandmother were either present at the meeting in person or attended by phone. During the November 5th meeting, Plaintiff's grandmother expressed her concern that Plaintiff was not learning at CES. In addition, Plaintiff's grandmother addressed what the boys were doing to Plaintiff. Plaintiff's grandmother said how the teachers had told Plaintiff to just ignore the boys. In addition, Plaintiff's grandmother addressed her frustration that Plaintiff was repeatedly forced to work with the boys at the same "station," despite Plaintiff's grandmothers repeated complaints about the boys' sexual harassment and assaults. Neither EGUSD or CES protected plaintiff, but rather consistently denied that anything could be happening at CES.

32.     Despite Plaintiff's grandmothers repeated calls and her concerns expressed at the November 5, 2019 IEP meeting, no changes were made to Plaintiff's individualized education plan to ensure her safety at CES.

33.     On or about November 8, 2019, Plaintiff showed her grandmother bruises on the side of her breasts. Plaintiff's grandmother asked if she had run into a wall or something. Plaintiff told her grandmother no, but that the two boys keep grabbing her breasts hard.

34.     Upon learning of this, Plaintiff's grandmother again contacted CES to make another complaint. Plaintiff's grandmother also became increasingly worried that it was unsafe to send Plaintiff to CES.

35.     Despite being informed of yet another assault, CES did not follow up with Plaintiff's grandmother, nor did CES conduct any investigation or otherwise implement any corrective safety measures as Defendants would have done had Plaintiff not been a disabled student who had difficulty expressing the harm that was being done.

36.     Sometime after the November IEP meeting, Plaintiff's grandmother also contacted Mr. Ira Ross whose title, on information and belief, is the Executive Director and/or Principal of CES. When Plaintiff's grandmother shared her concerns about the continued sexual assaults perpetuated on her granddaughter, Mr. Ross called her a liar and said that this didn't happen in his schools. Despite

informing the head of CES of the assaults, CES still did not follow up with Plaintiff's grandmother, conduct any investigation or otherwise implement any corrective safety measures as Defendants would have done had Plaintiff not been a disabled student who had difficulty expressing the harm that was being done.

37.     On or about December 22, 2019, Plaintiff again told her grandmother of another sexual assault involving the two boys. Plaintiff's grandmother sits down with Plaintiff about once a month for monthly check-ins. During this monthly talk, Plaintiff was scared to talk to her grandmother, which was unusual, and eventually told her grandma "Grammy, something happened." Plaintiff told her grandmother that while on the playground, the two boys took Plaintiff to the left-hand side of the building which is hidden from view from the playground. There, the two boys held Plaintiff's hands behind her back and took turns putting their penises inside her mouth over and over again. The boys told Plaintiff that "they wanted to be her friend" and that they would give her things if she put their penises in her mouth. The boys also threatened Plaintiff and told her they would beat her up if she screamed or didn't cooperate. Upon learning of this, Plaintiff's grandmother called and left a message with Ms. Marilyn Delgado, Program Specialist at EGUSD. Plaintiff's grandmother attempted to call Ms. Marilyn Delgado multiple times over the next few weeks, but did not receive a response from Ms. Delgado, EGUSD, or CES.

38.     After informing her grandmother of the sexual assault that occurred on the side of the school building, Plaintiff asked her Grandmother "why did they touch me," "why did they put their penises in my mouth," and "Am I ugly? They said I was ugly" almost daily.

39.     On or around December 23, 2019 a staff member from the Alta California Regional Center came by Plaintiff's grandmothers home to give Plaintiff Christmas gifts to honor Plaintiff's school achievements. Plaintiff's grandmother told a staff member, and Ms. Nguyen, about the sexual assaults and the boys putting their penises inside Plaintiff's mouth.

40.     Afraid for Plaintiff's safety, Plaintiff's grandmother did not send her back to CES after the Christmas holiday. Plaintiff returned to school on or around January 14th to attend a field trip that Plaintiff was allowed to go on because she had received enough "points" to attend. While

Plaintiff's grandmother did not want Plaintiff to return, Plaintiff begged and cried to be allowed to go on the field trip.

41.     On or about January 15, 2020, Plaintiff again had a problem with the two boys at school and started yelling to make them stop.  Plaintiff had points taken away from her by the teacher because of her outburst.  The boys continued to harass Plaintiff, and the teacher still told Plaintiff to just ignore them.  Because of Plaintiff's disability, her teachers never listened to what Plaintiff was saying and instead of implementing true corrective measures, they told her to just ignore the boys.

42.     On or about January 16, 2020, the boys told Plaintiff to come behind a board so they could hump her.  In addition, the teacher overheard the boys call Plaintiff a "bitch."  Upon learning of these facts, Plaintiff's grandmother again attempted to call Ms. Delgado several times.

43.     On or about January 30th, 2020, Ms. Delgado returned Plaintiff's grandmother's call after approximately 30 days of Plaintiff's grandmother attempting to reach Ms. Delgado. While Plaintiff's grandmother was on the phone with Ms. Delgado, Plaintiff came into the room and told Plaintiff's grandmother to tell Ms. Delgado that the boys put their penises in her vagina.  This was the first time Plaintiff's grandmother had heard of the rape.  The incident occurred on or about January 22, 2020, the day Plaintiff's class was supposed to go on a field trip to the Sacramento Zoo which was cancelled due to rain.  On that day, Plaintiff and her classmates were left unattended for an extended period of time while the teachers left the room to help a disruptive student. While the teachers were gone, the two boys asked Plaintiff if she wanted to have sex.  When Plaintiff said no, the boys put up a cardboard barrier on the table and set up chairs around them to keep other students from seeing or coming in.  The boys continued to push plaintiff down and made her lay across two chairs. There, they forced her legs open and vaginally raped her.  The boys asked Plaintiff if it felt good. When Plaintiff's teacher returned, Plaintiff ran up to the teacher crying and told her what the boys did to her. The teacher told Plaintiff to ignore the boys and told Plaintiff she would watch her better next time.

44.     Upon learning of these events, Plaintiff's grandmother immediately took Plaintiff to Methodist hospital where the Sacramento Police Department interviewed Plaintiff. Plaintiff told the

officers that two boys in her class touched her; made her put their penises in her mouth; and raped her.

45.     Despite both CES and EGUSD being informed of yet another sexual assault, Defendants failed to conduct a meaningful investigation into the very serious allegations of the repeated sexual assaults by the two boys. In fact, on information and belief, the Title IX Coordinator for the district was never even informed about the incident. CES did not follow up with Plaintiff's grandmother, nor did CES conduct any investigation or otherwise implement any corrective safety measures as Defendants would have done had Plaintiff not been a disabled student who had difficulty expressing the harm that was being done.

46.     Plaintiff's grandmother did not allow Plaintiff to return to CES after the incident. Plaintiff is currently enrolled in Pinkerton Middle School, in Elk Grove, California. Plaintiff is enrolled in a regular classroom setting and is doing well at her new school.

47.     Later communication between Plaintiff's grandmother and the Defendants only further heightened the lack of care or understanding by EGUSD and CES. Despite Plaintiff's grandmother's repeated calls and complaints which began in September 2019, Defendants denied being aware of any information suggesting that CES or EGUSD staff have been aware of sexual misconduct since as early as September 2019.  *See* Exhibit 1 (June 5, 2020 Letter from EGUSD's Counsel to M. Gorsen) and Exhibit 2 (Letter from Angelica Taber, Director of Capitol Elementary). In addition, EGUSD and CES denied that Plaintiff's grandmother shared her concerns about the boy's behavior at the November 5, 2019 IEP meeting. *See* Exhibit 1.  Instead, Defendants attempted to mask Plaintiff's allegations by claiming that, at the November 5 IEP meeting, the IEP team shared their concerns about Plaintiff's own use of inappropriate language with peers and adults. *Id*.  Even worse, Defendants maintain that nothing could have happened between Plaintiff and the two students because the boys "do not even like her." *See* Exhibit 2.

48.     Plaintiff continues to suffer trauma from the sexual harassment and assaults she experienced while entrusted to EGUSD's and CES's care.  Plaintiff was recently enrolled in Trauma therapy where she was diagnosed as showing severe signs of trauma.

**B.    Defendants Were Deliberately Indifferent Toward the Harm Caused Plaintiff By Her Repeated Sexual Abuse Because She Does Not Act or Communicate Like Non-Disabled Students.**

49.     From September of 2019 through January 2020, Plaintiff was repeatedly victimized by CES students and EGUSD and CES staff; however, because Plaintiff suffers from a disability and has trouble comprehending or communicating the harms perpetuated against her, Defendants did nothing.  Defendants, therefore, used the very characteristic that made Plaintiff vulnerable to abuse to justify their inaction and do nothing.

50.     What is known is that Plaintiff was subjected to at least eight instances of inappropriate sexual touching, harassment, or rape by the same two male students in her class.  Each of these incidents occurred *after* Plaintiff's grandmother put Defendants on notice that Plaintiff had been sexually harassed by the two boys in September 2019.

51.     Defendants failures are many and the harm caused to Plaintiff was completely preventable.  If Defendants had only listened to Plaintiff or Plaintiff's grandmother after they reported the first instance of sexual harassment or assault and implemented corrective measures, the other instances of sexual touching, harassment and rape would have been prevented.

52.     Because of Plaintiff's disability, Defendants failed to supervise, investigate, report, discipline, or take any other meaningful corrective measures, that would have been taken for a non-disabled student who was able to better communicate what had happened to himself or herself.  That these failures were repeated, knowing that Plaintiff was victimized and that her disability made her particularly susceptible to abuse, constitutes deliberate indifference.  That Defendants repeated these failures time and time again displays a deliberate indifference toward the significant harm that has been caused.

**FIRST CAUSE OF ACTION**
**Discrimination in Violation of the Americans With Disabilities**
**Act, 42 U.S.C. section 12131, et seq.**
**(Against Defendant EGUSD)**

53.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

54.     Congress enacted the Americans with Disabilities Act ("ADA") upon finding, among other things, that society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to occur and that  "individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination." 42 U.S.C. § 12101(a).

55.     In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

56.     Effective January 26, 1992, Title II of the Americans with Disabilities Act of 1990, entitled Plaintiff to the protections of the "Public Services" provision.  Title II Subpart A prohibits discrimination by any "public entity," including any state or local government as defined by 42 U.S.C. § 12131, section 201 of the ADA.

57.     Plaintiff alleges that EGUSD denied her the benefits of access to their educational program when it acted with deliberate indifference by failing to report, investigate, or discipline known instances of inappropriate sexual touching and sexual abuse.  EGUSD also failed to supervise, train, or discipline staff, therefore, creating an extremely high risk that such abuses will continue to occur.

58.     Additionally, EGUSD failed in its responsibilities under Title II to provide its services, programs and activities in a full and equal manner to disabled persons, by failing to ensure the educational services are provided on an equal basis to children with disabilities, without hostility toward their disability.

59.     Plaintiff alleges that EGUSD employees were deliberately indifferent to the repeated abuses committed against Plaintiff because of her disability.

60.     The deliberate indifference by employees of EGUSD gives rise to the liability of EGUSD under the well-established legal principle of *respondeat superior.  Duvall v. County of Kitsup*, 260 F.3d 1124 (9th Cir. 2001), makes abundantly clear that, when a plaintiff brings a direct suit under the ADA or the Rehabilitation Act, an employer is liable in *respondeat superior* for the acts of its employees.

61.    Defendant's conduct as alleged herein, was a substantial factor in causing Plaintiff's harm.

62.    As a direct, proximate, and foreseeable result of EGUSD's failure to comply with their duty under Title II, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

63.    As a direct, proximate, and foreseeable result of Defendant's conduct, Plaintiff was forced to retrain an attorney in order to protect her rights.  Accordingly, Plaintiff seeks reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial as mandated under 42 U.S.C. § 12205.

**SECOND CAUSE OF ACTION**
**Discrimination in Violation of the Americans With Disabilities**
**Act, 42 U.S.C. section 12181, et seq.**
**(Against Defendant CES)**

64.    Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

65.    Congress enacted the Americans with Disabilities Act ("ADA") upon finding, among other things, that society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to occur and that "individuals who have experienced discrimination on the basis of disability have often had no legal recourse to redress such discrimination." 42 U.S.C. § 12101(a).

66.    In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

67.    Effective January 26, 1992, Title III of the Americans with Disabilities Act of 1990, entitled Plaintiff to the protections of the "Public Accommodations" provision.  Title III prohibits discrimination on the basis of disability in the "activities of places of public accommodations" as defined by 42 U.S.C. § 12181, section 301 of the ADA.  Pursuant to 42 U.S.C. § 12181(7)(J), private schools are considered public accommodations for purposes of Title III.

68.    Plaintiff alleges that CES denied her the benefits of access to their educational program when it acted with deliberate indifference by failing to report, investigate, or discipline known instances of inappropriate sexual touching and sexual abuse.  CES also failed to supervise, train, or discipline staff, therefore, creating an extremely high risk that such abuses will continue to occur.

69.    Additionally, CES failed in its responsibilities under Title III to provide full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations to disabled persons, by failing to ensure the educational services are provided on an equal basis to children with disabilities and without hostility toward their disability.

70.    Plaintiff alleges that CES employees were deliberately indifferent to the repeated abuses committed against Plaintiff because of her disability.

71.    The deliberate indifference by employees of CES gives rise to liability under the well-established legal principle of *respondeat superior*.  *Duvall v. County of Kitsup*, 260 F.3d 1124 (9th Cir. 2001), makes abundantly clear that, when a plaintiff brings a direct suit under the ADA or the Rehabilitation Act, an employer is liable in *respondeat superior* for the acts of its employees.

72.    Defendant's conduct as alleged herein, was a substantial factor in causing Plaintiff's harm.

73.    As a direct, proximate, and foreseeable result of CES's failure to comply with their duty under Title III, Plaintiff has incurred special and general damages, the precise amount of which will be proven at trial.

74.    As a direct, proximate, and foreseeable result of Defendant's conduct, Plaintiff was forced to retrain an attorney in order to protect her rights.  Accordingly, Plaintiff seeks reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial as mandated under 42 U.S.C. § 12205.

///

///

///

COMPLAINT

**THIRD CAUSE OF ACTION**
**Discrimination in Violation of the Rehabilitation Act of 1973**
**29 U.S.C. § 794**
**(Against Defendants EGUSD and CES)**

75.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

76.     Under Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. 794 ("Section 504"), a qualified individual with a disability may not, solely by reason of his/her disability, be subjected to discrimination, excluded from participation in, or denied the benefits of, any program or activity receiving Federal financial assistance.  29 U.S.C § 794(a).  As such, § 504 prohibits not only "discrimination" against the disabled, but also "exclu[sion] from … participation in" and "deni[al] [of] the benefits of" states programs solely by reason of a disability.  Furthermore, although § 504's provisions are not expressly affirmative in nature, the regulations adopted pursuant to § 504 charge qualifying public schools with affirmatively "provid[ing] a free appropriate public education to each qualified handicapped person."  34 C.F.R. § 104.33(a).  Under those § 504 regulations, a "free appropriate public education" requires "regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met." 34 C.F.R. § 104.33(b)(1) (emphasis added).  Section 504's regulations gauge the adequacy of services provided to disabled individuals by comparing them to the level of services provided to individuals who are not disabled.

77.     Plaintiff is informed and believes and thereon alleges that EGUSD and CES are and were at all relevant times the recipients of Federal financial assistance, and that part of the financial assistance has been used to fund the operations, construction and/or maintenance of the specific facilities described herein and the activities that take place therein.

78.     Plaintiff alleges that by subjecting Plaintiff to sexual and emotional abuse, Plaintiff was unable to enjoy the benefits of her education.  Plaintiff alleges that non-disabled children who attend EGUSD are not subjected to similar acts of unconstitutional abuse.  Because of this, the education received by Plaintiff was not comparable to that received by non-disabled students.

79.     Additionally, Defendants' conduct, as described herein, was a substantial factor in causing Plaintiff's harm.

80.     By its facts or omissions in denying equal access to educational services and by subjecting plaintiff to a hostile educational environment, Defendants have violated the rights of Plaintiff under Section 504 and the regulations promulgated thereunder.

81.     As set forth in this Complaint, Defendants were deliberately indifferent to the risk that its actions would deprive Plaintiff of equal and meaningful access to education.

82.     Defendants' employees were deliberately indifferent to the significant abuse committed by students in Plaintiff's class.  They had actual knowledge of the abuse and knew that the boys, and others, were likely to continue abusing Plaintiff and students similarly situated to Plaintiff but failed to act upon that knowledge.

83.     EGUSD and CES are vicariously liable for the actions or inactions of its employees under well-established legal principle of *respondeat superior*.  *Duvall v. County of Kitsup*, 260 F.3d 1124 (9th Cir. 2001), makes abundantly clear that, when a plaintiff brings a direct suit under the ADA or Rehabilitation Act, an employer is liable in *respondeat superior* for the acts of its employees.

84.     As a direct, proximate, and foreseeable result of Defendants' failure to comply with their duty under Section 504 and the regulations promulgated thereunder, Plaintiff has suffered damages, including special and general damage, the precise amount of which will be proven at trial.

85.     As a direct, proximate, and foreseeable result of Defendants' conduct, Plaintiff was forced to retain an attorney in order to protect her rights.  Accordingly, Plaintiff seeks reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial as mandated under 29 U.S.C. 34 C.F.R. § 794(a).

**FOURTH CAUSE OF ACTION**
**Discrimination in Violation of Title IX of the Education**
**Amendments of 1972, 20 U.S.C. 34 C.F.R. § 1681 et. seq.**
**(Against Defendants EGUSD and CES)**

86.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

- 17 -
COMPLAINT

87.    Title IX of the Education Amendments of 1972 prohibits sex-based discrimination in any federally funded education program or activity. (20 U.S.C. § 1681(a)).

88.    In the context of the sexual assault of a student by a teacher, the school district may be liable under Title IX where an appropriate person has actual knowledge of the sexual harassment and fails to adequately respond such that the response amounts to deliberate indifference to the harassment.  *Gebser v. Lago Vista Independent School Dist.*, 524 U.S. 274, 290 (1998).   An appropriate person is someone who has the authority to take corrective action.  *Id.*  These principles are also applicable to the sexual assault of a student by another student.

89.    Plaintiff is informed and believes and thereon alleges that EGUSD and CES are and were at all relevant times the recipients of Federal financial assistance, and that part of that financial assistance has been used to fund the operations, construction and/or maintenance of the specific education program and activities that take place therein.

90.    At all relevant times, CES and EGUSD employees had the authority to investigate claims of sexual abuse and harassment and to institute corrective measures on behalf of CES and EGUSD.  Despite having knowledge of actual abuse, Defendants took no immediate or effective corrective action.

91.    Plaintiff further alleges Defendants EGUSD and CES, through their officials, had actual knowledge of sexual abuse perpetrated against Plaintiff.

92.    Despite having knowledge of actual sexual abuse, EGUSD and CES failed to take immediate or effective corrective measures, including the identification and prevention of subsequent abuse.  Through its actions and inactions, EGUSD and CES persisted in a pattern or practice of acting with deliberate indifference towards Plaintiff.

93.    Plaintiff alleges that Defendants EGUSD and CES personally participated in the deprivation of Plaintiff's rights by failing to train, discipline, and supervise their employees.  There is a clear duty to prevent the sexual abuse of disabled students, an obligation of which Defendants' employees should be fully aware.  Defendants' failure to inform and train its employees of that duty creates an extremely high risk that such violations will occur.  On information and belief, Defendants had actual knowledge that its employees confronted this particular situation on a regular basis, and

that the employees often reacted in a manner contrary to constitutional requirements.  Defendants, nonetheless, have failed to maintain adequate policies and conduct adequate training to prevent these violations of the rights of students.  The training program Defendants provide is inadequate in relation to the tasks its employees are expected to perform.  The need for more and different training was obvious or should have been obvious to Defendants, and inadequate training was also so likely to result in abuse and the failure to report that abuse.  Therefore, Defendants were deliberately indifferent to the need for more and different training.

94.     Plaintiff alleges that she was harmed, and that Defendants conduct was a substantial factor in causing that harm.

95.     As a direct, proximate, and foreseeable result of Defendants' failure to comply with their duty under Title IX and the regulations promulgated thereunder, Plaintiff has suffered damages, including special and general damages, the precise amount of which will be proven at trial.

**FIFTH CAUSE OF ACTION**
**Unruh Civil Rights Act**
**California Civil Code § 51 et. seq.**
**(Against Defendant EGUSD, CES, Marilyn Delgado, Ira Ros and DOES 1-10)**

96.     Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

97.     California Civil Code § 51 provides that "[A]ll persons within the jurisdiction of this state are free and equal, no matter what their … disability [or] medical condition … are entitled to the full and equal accommodations, facilities, privileges, or services in all business establishments of every kind whatsoever."

98.     The Unruh Act also provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f).

99.     Defendants are or operate business establishments within the jurisdiction of the State of California and within the meaning of the California Civil Code Section 51 *et. seq.* ("the Unruh Act").

100.    Defendants have violated the Unruh Act by, among other things, denying, aiding, or inciting the denial of Plaintiff's rights to the full and equal accommodations, advantages, facilities, privileges, or services offered by Defendants.

101.    Plaintiff was bullied, harassed, and attacked because of her disabilities. This was known to CES and EGUSD officials as both Plaintiff and her grandmother notified them about their concerns about harassment and Plaintiff's safety.  Defendants failed to intervene to stop the harassment and prevent the assaults and batteries upon Plaintiff by her classmates.  Moreover, Defendants were deliberately indifferent to the risk that this would happen by failing to supervise the two boys and allowing the boys to attack plaintiff.

102.    Defendants have also violated the Unruh Act by denying, aiding, or inciting, the denial of Plaintiff's right to equal access under California state law and the ADA.

103.    As a direct, proximate, and foreseeable result of Defendants' failure to comply with their duty under Unruh Act and the regulations promulgated thereunder, Plaintiff has suffered damages, including special and general damages, the precise amount of which will be proven at trial.

104.    As a direct, proximate, and foreseeable result of Defendants' conduct, Plaintiff was forced to retain an attorney in order to protect her rights.  Accordingly, Plaintiff seeks reasonable attorneys' fees and costs incurred in this litigation in an amount according to proof at trial.

## SIXTH CAUSE OF ACTION
**Negligent Failure to Perform Mandatory Duties under Government Code Sections 815.6 and 820 in the Supervision and Training**
**(Against Defendant EGUSD, CES, Marilyn Delgado, Ira Ross, and DOES 1-10)**

105.    Plaintiff incorporates the allegations contained in the preceding paragraphs as though fully set forth herein.

106.    Defendants, EGUSD, CES, Ms. Delgado, Mr. Ross, and DOES 1-10 at all times relevant, had affirmative mandatory duties under Government Code sections 815.6 and 820 to keep students safe on their campuses and protect students like Plaintiff, from foreseeable harm, sexual violence, harassment, bullying, sexual violence, and gender discrimination by the two male students in her class.  This mandatory duty included protecting entrusted to their care by Plaintiff's parents and included the duty to exercise ordinary care in the supervisor of students on its campuses.

107.    While school districts, schools, and their employees are not insurers of physical safety of students, California law has imposed a duty on school authorities to supervise at all times the conduct of children on the school grounds and to enforce those rules and regulations necessary to their protection.  Defendants EGUSD and CES, during all times relevant, had a duty to supervise students on the premises of CES. *See* Cal. Gov. Code § 44807.  The standard of care imposed on school personnel in carrying out duty to supervise is identical to that required in the performance of their duties, *i.e.*, that degree of care which a person of ordinary prudence, charged with comparable duties, would exercise under the same circumstances; either a total lack of supervision or ineffective supervision may constitute a lack of ordinary care on the part of those responsible for student supervision.  *Hoff v. Vacaville Unified School District*, 19 Cal.4th 925 (1998). Defendant EGUSD, CES, and school personnel where responsible for student supervision.

108.    The duty of care owed by school personnel includes the duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties. This principle has been applied in cases of employee's negligence resulting in injury to a student from another student. *J.H. v. Los Angeles Unified School District*, 183 Cal.App.4th 123, 128-129, 141-142 (2010).

109.    Moreover, Defendants had a duty to protect Plaintiff from sexual assault on campus. *See M. W. v. Panama Buena Vista Union School Dist.*, 110 Cal. App. 4th 508 (2003).

110.    Defendants are all responsible for student supervision at CES.  They had a duty of care toward Plaintiff and other students to prevent sexual violence, harassment, bullying, sexual violence, and gender discrimination from occurring on the school premises.  Defendants breached their duty of care to Plaintiff by failing to supervise the conduct of students and specifically the two male students in Plaintiff's class.  Defendants also breached their duty by failing to supervise the students even after known instances of sexual harassment and assault.

111.    EGUSD and CES are vicariously liable for injuries proximately caused by negligence of school personnel responsible for student supervision.  Cal. Gov. Code § 815.2(a).

112.    DOES 1-10 are employees of EGUSD or CES and are responsible for supervising students. They had a duty of care toward Plaintiff and all other students to prevent the harassment and sexual assault occurring on the premises of CES. DOES 1-10 breached their duty of care by

failing to supervise the conduct of students, giving rise to vicarious liability of EGUSD and CES. Moreover, DOES 1-10 breached their duty of care by failing to protect Plaintiff from the harassment and sexual assault occurring on the premises of CES, giving rise to vicarious liability of EGUSD and CES.

113.    The breach of duty by the Defendants to supervise and protect students like Plaintiff caused Plaintiff serious physical and psychological injuries.  Plaintiff has and is undergoing mental health counseling and treatment to deal with the trauma, which has compounded her pre-existing diagnoses.

114.    As a proximate, and foreseeable result of Defendants' negligent acts, Plaintiff has incurred damages, including special and general damages, the precise amount of which will be proven at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgement against all Defendants and DOES 1 through 10, and each of them, on all theories of action as follows:

1.    For general damages within the jurisdiction of the Court according to proof;

2.    For all special damages, including but not limited to medical and incidental expenses according to proof, property damage and loss of use;

3.    For punitive damages against non-public entity Defendants, as permitted by law;

4.    For costs of suit herein;

5.    For attorneys' fees, as permitted by law;

6.    For prejudgment interest as permitted by law; and

7.    For such other and further relief as the Court deems proper.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

Dated:     November 17, 2020

By: */s/ Katherine G. Rubschlager*

Katherine G. Rubschlager (State Bar No. 328100)
**ALSTON & BIRD LLP**
1950 University Avenue, Suite 430
East Palo Alto, CA  94303
Telephone:     650-838-2000
Facsimile:      650-838-2001
E-mail: katherine.rubschlager@alston.com

*Attorneys for Plaintiff*

COMPLAINT

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:     November 17, 2020

By: */s/ Katherine G. Rubschlager*

Katherine G. Rubschlager (State Bar No. 328100)
**ALSTON & BIRD LLP**
1950 University Avenue, Suite 430
East Palo Alto, CA  94303
Telephone:     650-838-2000
Facsimile:     650-838-2001
E-mail: katherine.rubschlager@alston.com

*Attorneys for Plaintiff*