UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.R. by and through her Guardian ad Litem, Tiffany Roe,<br><br>Plaintiff,<br><br>v.<br><br>Elk Grove Unified School District, et al.,<br><br>Defendants. | No. 2:20-cv-02296-KJM-AC<br><br>ORDER |

Elk Grove Unified School District and Marilyn Delgado, an employee, allege Capitol Elementary School has not lived up to its obligations under its "Master Contract" to provide educational services. As explained in this order, the district and Delgado have cited undisputed evidence to show they are entitled to relief under their fourth and fifth crossclaims against the school. The school has an obligation to defend and indemnify the district and Delgado in this action, and the school breached its obligation to obtain insurance. The court **grants** the pending motion for partial summary judgment of these crossclaims (ECF No. 67).[1]

---

[1] The court resolves the motions at ECF Nos. 119, 120 and 138 in a separate and concurrently filed order.

## I. BACKGROUND

C.R., the plaintiff in this case, is pursuing claims through Tiffany Roe, her grandmother and guardian ad litem.[2] *See* Compl. at 2, ECF No. 1; Order (May 1, 2023), ECF No. 53. According to the complaint, C.R. was diagnosed with autism when she was very young. Compl. ¶ 17. She also has developmental disabilities related to fetal alcohol syndrome. *Id.* ¶ 18.

In 2019, C.R. was a seventh grader at Capitol Elementary School (CES or the school). *Id.* ¶¶ 19–22. CES is not a public school; it enrolls students with special needs and receives tuition for these students under annual contracts with the Elk Grove Unified School District (EGUSD or the district). *Id.* ¶¶ 6–7. Some students at the school have developmental disabilities. *Id.* ¶ 20. Others have what the district describes as other "behavioral issues" that require specialized care. *Id.*

The claims in this case stem from C.R.'s allegations that two classmates sexually assaulted and raped her at school. *See id.* ¶¶ 23–48. Ms. Roe claims C.R. told her about what was happening to her at school, and she alleges she tried again and again to persuade C.R.'s teachers and the school's administrators to investigate and intervene, but she claims the abuse continued until she removed C.R. from the school. *See id.* Ms. Roe also alleges she urged the school district to intervene without success, including by contacting Delgado, who is a specialist at the district with responsibilities over students in non-public schools. *See id.* ¶¶ 9, 31–32, 37, 42–43, 45, 47.

In this action, C.R. asserts claims against both the school and the district. Her first two claims—one against the school district, one against the school—are discrimination claims under the federal Americans with Disabilities Act. *See id.* ¶¶ 53–74. The third and fourth claims allege discrimination in violation of the federal Rehabilitation Act of 1973 and Title IX, respectively, in both instances against the school and district. *See id.* ¶¶ 75–95. The fifth claim alleges the school, district and their individual employees violated the California Unruh Civil Rights Act, *id.*

---

[2] Both C.R. and Ms. Roe are using pseudonyms. Order (Mar. 29, 2021), ECF No. 18.

2

¶¶ 96–104, and the sixth claim alleges the same defendants negligently failed to protect C.R. in violation of state law, *id.* ¶¶ 105–14.

The school, the district, and Delgado all deny C.R's allegations of wrongdoing and discrimination and deny any liability. *See generally* School Defs.' Answer, ECF No. 14; District Defs.' Answer & Crosscl., ECF No. 34. According to a letter attached to C.R.'s complaint, the school and district investigated C.R.'s allegations and determined they were "unfounded." Compl. Ex. 1 at 2, ECF No. 1-1. In other filings, the district has stated its position that C.R.'s allegations are fictitious but are serious symptoms of her condition and history. *See* Reply at 2, ECF No. 74. Discovery has now concluded. *See* Order (July 19, 2024), ECF No. 103.

In addition to the litigation about C.R.'s claims and the defendants' response to them, the district and Delgado are pursuing crossclaims against the school. *See* Crosscl. ¶¶ 7–35. They allege the school has fallen short of its obligations under their annual agreement, i.e., their "Master Contract." *See id.* ¶ 3. Two of these crossclaims are disputed here. In the first, the district and Delgado claim the school has wrongly refused to honor its promise to defend them against C.R.'s claims under an indemnity provision in the Master Contract. *See id.* ¶¶ 25–30. In broad strokes, the school agreed to indemnify the district and its employees against any liability arising out of the Master Contract or its performance to the extent that liability was caused by the school's and its employees' negligence or intentional or willful acts or omissions. *See id.* Ex. B at 14. In the second crossclaim, the district and Ms. Delgado allege the school did not maintain adequate insurance against claims of sexual misconduct, again as required by the Master Contract. *See id.* ¶¶ 31–35 & Ex. B at 13–14.

The district and Ms. Delgado move for partial summary judgment on these two crossclaims. *See generally* Mot., ECF No. 67; Mem., ECF No. 67-1. The motion is fully briefed. *See generally* Opp'n, ECF No. 72; Reply, ECF No. 74. The court previously took the matter under submission without holding a hearing, *see* ECF No. 82, but later reset the matter for argument, ECF No. 139, which took place on November 7, 2024, *see* Hr'g Mins., ECF No. 146. Richard Linkert and Madison Simmons appeared for the school district, and Cynthia Lawrence and Blaze Van Dine appeared for CES. *Id.*

3

## II. EVIDENTIARY OBJECTIONS

The court first resolves a threshold evidentiary dispute. Under Federal Rule of Civil Procedure 56, litigants who move for or oppose summary judgment must cite "particular parts of materials in the record" to show specific facts are disputed, undisputed or cannot be proved, as the case may be. *See* Fed. R. Civ. P. 56(c)(1). This district's local rules implement that rule by requiring a separate statement proposing undisputed facts. *See* E.D. Cal. L.R. 260(a). The separate statement must "cite the particular portions" of the record that establish each proposed fact as "undisputed." *Id.* The opposing party must then respond to each proposed fact on the list and either admit or deny that the fact is undisputed. *See* E.D. Cal. L.R. 260(b). If the opposing party contends the fact is disputed, it must cite "the specific particular portions" of the record showing the fact is disputed. *Id.*

The school district and Ms. Delgado filed the required separate statement along with their motion. *See generally* Stmt. Facts, ECF No. 67-2. The vast majority of these proposed facts are straightforward and simple. Many summarized the complaint's allegations. For example, according to the sixth proposed fact, the complaint "alleges that upon being notified, Capitol Elementary School took no action." *Id.* at 2. Other entries on the list ask the school to agree the Master Contract includes specific language. For example, in the twelfth proposed fact, the district and Ms. Delgado asked the school to agree the contract includes the disputed indemnity provision. *See id.* at 3. Still other proposed undisputed facts describe letters and other correspondence in which the parties' positions crystalized. *See id.* at 4–5.

The school agreed some of the proposed facts were undisputed in its response to the district's separate statement. It agreed, for example, that C.R. was a student at Capitol in 2019 and that her complaint generally alleges she was subject to sexual abuse by classmates. *See* Resp. Stmt. Facts Nos. 4–5, ECF No. 72-1. The school also persuasively objected to the district's and Ms. Delgado's assertion that she had reported Ms. Roe's and C.R.'s allegations to Child Protective Services. *See id.* No. 8. The district and Ms. Delgado cited only the complaint to support that claim, but as the school correctly pointed out in response, the complaint includes no such allegation, let alone an averment. *See id.*

4

For many other proposed undisputed facts, however, the school's responses and objections are confusing and unpersuasive. Most seem not to identify any true dispute. Many contradict themselves. Many are terse and repetitive. Two examples illustrate these problems.

The first is the school's disagreement with the district's and Ms. Delgado's assertion that "[t]here was a Master Contract for the 2019–2020 School Year." *See id.* No. 10. The school did not explain in its responsive filing why that fact is in dispute. Instead it made several objections. It objected, for example, that the district had attached excerpts of a deposition transcript to its filing rather than the entire transcript. But it did not identify any relevant portions of the deposition transcript that should have been included or why. The school also objected that the deposition excerpts did not support the proposed fact, but again it offered no explanation; contrary to its objection, it seems in fact to agree there was a Master Contract, as its counsel confirmed at hearing. The school also objected to the district's assertion there was a master contract because, in its view, that assertion was "speculative," lacked foundation, was "an improper legal conclusion" and called for an expert opinion. *Id.* Again it offered no explanation. It is difficult to understand what might be "speculative" about the assertion there was a master contract and what legal or expert opinion might be necessary to reach that conclusion.

The second example is the school's response to the district's assertion that it tendered the defense of this action by sending a letter on December 30, 2020. *See id.* No. 14. The district relied on a declaration by its attorney—the attorney who sent the letter—to show the fact was undisputed. *See id.* (citing Linkert Decl. ¶ 4 & Ex. 3). In response, the school objected based on lack of foundation, hearsay, improper legal conclusions and expert opinion. *See* Resp. Stmt. Facts No. 14. It is unclear what further foundation could have been laid. The district was not attempting to admit the letter to prove that any claim within it was true, but rather to show it had tendered a defense, so the remaining objections were meritless. And in any event, despite the school's objections, it relied on the same supposedly inadmissible letter to support its own position. *See id.*

Again, these are just two examples of many similar objections. It is unclear what proper purpose the school's many repetitive, boilerplate objections could have served. The school

5

1  appears to have asserted those objections without regard for their merit.  The school also appears
2  to have claimed several facts were disputed when they were not.  Its objections and responses
3  have needlessly complicated the resolution of the pending motions.  The court cautions counsel
4  that Federal Rule of Civil Procedure 11 applies to every "pleading, written motion, and other
5  paper," including written evidentiary objections filed in connection with a summary judgment
6  motion.  *See* Fed. R. Civ. P. 11(a).  Courts also have often warned litigants not to append long
7  lists of terse and formulaic objections to their summary judgment papers.  *See, e.g.*, *City of*
8  *Lincoln v. County of Placer*, 668 F. Supp. 3d 1079, 1086 (E.D. Cal. 2023) (collecting authority).
9  "This is especially true when many of the objections are boilerplate recitations of evidentiary
10 principles or blanket objections without analysis applied to specific items of evidence." *Doe v.*
11 *Starbucks, Inc.*, No. 08-0582, 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).  The school's
12 objections are overruled to the extent the court relies on any of the disputed evidence in this
13 order.

14 **III.   DUTY TO DEFEND (CROSSCLAIM 4)**

15      Turning now to the substance of the dispute at hand, the district and Ms. Delgado contend
16 in their fourth crossclaim that the school has "an immediate duty" to defend them from C.R.'s
17 claims.  Mem. at 1; *see also* Crosscl. ¶¶ 25–30.  They seek summary judgment in their favor on
18 this claim.

19      Summary judgment is appropriate if "there is no genuine dispute as to any material fact
20 and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute is
21 "genuine" if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*
22 *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome
23 of the suit under the governing law." *Id.*  The court views the record in the light most favorable
24 to the nonmoving party and draws reasonable inferences in that party's favor.  *Matsushita Elec.*
25 *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Adickes v. S.H. Kress & Co.*,
26 398 U.S. 144, 157 (1970).

27      The portion of the Master Contract at the center of the fourth crossclaim is an indemnity
28 agreement.  Recovery under an indemnity provision is a state law claim, so the court applies

California law. *Pedraza v. Alameda Unified Sch. Dist.*, No. 05-4977, 2012 WL 1029523, at *5 (N.D. Cal. Mar. 26, 2012), *aff'd*, 676 F. App'x 704 (9th Cir. 2017) (unpublished). An indemnity agreement "is a contract by which one engages to save another from a legal consequence of the conduct of one of the parties, or of some other person." Cal. Civ. Code § 2772. In general, indemnity agreements are "construed under the same rules as govern the interpretation of other contracts." *Crawford v. Weather Shield Mfg., Inc.*, 44 Cal. 4th 541, 552 (2008). The court attempts to give effect "to the parties' mutual intent, as ascertained from the contract's language if it is clear and explicit." *Id.* (citing Cal. Civ. Code §§ 1636, 1638). "Unless the parties have indicated a special meaning, the contract's words are to be understood in their ordinary and popular sense." *Id.* (citing Cal. Civ. Code § 1644).

California law sets several default rules for every indemnity agreement. *See* Cal. Civ. Code § 2778; *Crawford*, 44 Cal. 4th at 553. The obligations imposed by these default rules are "deemed included in every indemnity agreement unless the parties indicate otherwise." *Crawford*, 44 Cal. 4th at 553. Three of these rules are relevant here. First, an agreement to indemnify a person against specific claims "embraces the costs of defense against such claims . . . incurred in good faith, and in the exercise of a reasonable discretion." Cal. Civ. Code § 2778(3). That is, an agreement to indemnify a person includes an implicit promise to pay not only if the indemnified person is ultimately liable, but also to pay the indemnified person for any reasonable costs that person incurs while defending against the claim, such as an attorney's fees. *See Crawford*, 44 Cal. 4th at 555. Second, "[t]he person indemnifying is bound" not only to pay for the costs of the defense, but also "to defend." Cal. Civ. Code § 2778(4). The duty to defend is in this way an "active responsibility" that "arises as soon as [the] claims are made." *Crawford*, 44 Cal. 4th at 553–54. Third, because the duty to defend arises when the claims are made, it is independent of the duty to indemnify. *See id.* at 558. That is, the duty to defend does not "depend on the outcome of the litigation." *Id.* If a third party alleges facts "that would give rise to a duty of indemnity," the person who agreed to indemnify has an obligation to provide a defense to the indemnified person against those allegations. *Id.* Putting these rules together, unless the contract "expressly provides otherwise, a contractual indemnitor has the obligation,

7

upon proper tender by the indemnitee, to accept and assume the indemnitee's active defense against claims encompassed by the indemnity provision." *Id.* at 555. If the indemnitor breaches that obligation, then "an indemnitee who was thereby forced, against its wishes, to defend itself is entitled to reimbursement of the costs of doing so." *Id.*

The first question here, then, is whether the Master Contract imposes any different obligations than the default rules summarized above. It does not. The contract's indemnity provisions first describe the school's obligations:

> To the fullest extent allowed by law, [the school] shall indemnify and hold [the district] and its . . . employees . . . harmless against all liability, loss, damage and expense (including reasonable attorneys' fees) resulting from or arising out of this Master Contract or its performance, to the extent that such loss, expense, damage or liability was proximately caused by negligence, intentional act, or willful act or omission of [the school], including, without limitation, . . . anyone employed directly or indirectly by it (excluding [the district] and [the district's employees, among others]). . . .

Linkert Decl. Ex. 2 at 9. The contract therefore recognizes the school has a duty to defend the district and its employees against claims arising out of the Master Contract.

The remainder of the first paragraph in the indemnity provision clarifies a few potential uncertainties:

> . . . The duty and obligation to defend shall arise immediately upon tender of a claim or lawsuit to the [school]. The [district] shall have the right, in its sole discretion, to select counsel of its choice to provide the defense at the sole cost of the [school] or the applicable insurance carrier.

*Id.*

The next paragraph describes the district's reciprocal obligations:

> To the fullest extent allowed by law, [the district] shall indemnify and hold [the school] and its . . . employees . . . harmless against all liability, loss, damage and expense (including reasonable attorneys' fees) resulting from or arising out of this Master Contract or its performance, to the extent that such loss, expense, damage or liability was proximately caused by the negligent or willful act or omission of [the district], including, without limitation, . . . anyone employed

8

> directly or indirectly by it (excluding [the school] and/or [the school's employees, among others]).

*Id.* In contrast to the previous paragraph, this paragraph does not identify the district's duty to defend. Instead, the Master Contract moves on to confirm a different point about the district's self-insurance:

> [The district] represents that it is self-insured in compliance with the laws of the state of California, that the self-insurance covers district employees acting within the course and scope of their respective duties and that its self-insurance covers [district's] indemnification obligations under this Master Contract.

*Id.*

In sum, the Master Contract provides that if the district is liable for damages arising out of the performance of the Master Contract, then the school must indemnify the district for any damages caused by the negligence of the school or its employees, their willful or intentional acts or their omissions. But the school's duty to indemnify the district does not extend to damages caused by the district's or its employees' own negligence or willful or intentional acts or omissions. In addition to its duty to indemnify, the school must also defend the district against claims that could result in indemnified damages. That duty arises when the district tenders a claim to the school. The district has similar obligations to the school: if the school is liable for damages arising out of the performance of the Master Contract, then the district must indemnify the school for any of those damages that were caused by the district's or its employees' negligence, their willful or intentional, or their omissions. But again, the district's duty to indemnify the school does not extend to damages caused by the school's or its employees' own negligence or willful or intentional acts or omissions. Finally, the district represents that its self-insurance covers its employees' actions within their duties and the district's indemnity obligations.

If C.R.'s allegations against the district are proven, they would likely result in damages covered by these indemnity provisions. The alleged assaults and abuse at the foundation of C.R.'s claims occurred on the school's property while she and the other students were under the

supervision of the school's employees and administrators. *See, e.g.*, Compl. ¶¶ 24, 26, 43. She alleges the school had a duty to protect her and other students at the school, including from sexual assault, but did not. *See, e.g.*, *id.* ¶¶ 108–12. She alleges the defendants denied her the benefits of a "full" and "equal" education, *id.* ¶¶ 57–58, 68–70, and a "free appropriate public education," *id.* ¶ 76 (quoting 34 C.F.R. § 104.33(a)). These allegations and others in the complaint "give rise to a duty of indemnity" under the Master Contract because they charge the district with liability for damages caused by the school's and its employees' misconduct. *Crawford*, 44 Cal. 4th at 558. The school therefore had a duty to defend the district when the district first tendered C.R.'s claims.

The California Supreme Court's opinion in *Crawford* confirms this conclusion. That case was about a dispute between a general contractor (a developer and construction company) and several subcontractors, including a company that designed and manufactured windows. *See id.* at 547–48. The window company had promised to indemnify the developer for any damages "growing out of the execution" of the window company's work. *Id.* at 547–48. The window company also had promised to "defend any suit or action brought against [the developer] founded upon the claim of such damage." *Id.* at 548 (emphasis omitted). After the window company's windows were installed in several homes, a group of homeowners sued the developer, the window company and several other subcontractors for damages caused by several alleged construction defects, including damages caused by problems with the windows and their installation. *Id.* The developer asked the window company to defend the claims, but the window company refused. *Id.* A jury eventually found the window company had not been negligent—as it turned out, the jury found another subcontractor was at fault—but on appeal, the California Supreme Court held despite that verdict, the window company had wrongly refused to provide a defense to the developer. *See id.* at 549, 553–54. At the time the case was filed, the homeowners' allegations, unproven though they then were, "would give rise to a duty of indemnity" under the contract. *Id.* at 558. This meant the window company had a duty to defend the developer even if the window company did not, in the end, actually have any obligation to indemnify the developer. *See id.*

The analogy between *Crawford* and this case is straightforward. In *Crawford*, the window company had agreed to indemnify the developer for any damages caused by the window company's work; in this case, the school agreed to indemnify the district and its employees for any damages caused by the school's or its employees' wrongdoing. In *Crawford*, the window company agreed also to defend the developer against claims that could result in an indemnified liability; the school promised similarly in this case to defend the district and its employees. In *Crawford*, the developer faced a potential liability as a result of the homeowners' allegations about defects in the window company's work; in this case, the district and Ms. Delgado face a potential liability as a result of C.R.'s allegations about abuse at the school. In *Crawford*, the window company was obligated to provide a defense regardless of its potential exoneration at trial because the indemnity agreement covered the homeowners' allegations; in this case, the school is obligated to provide a defense to the district and to Ms. Delgado regardless of what a jury might one day decide because C.R. alleges the school and its employees caused her harm.

This conclusion withstands the school's arguments about the district's own allegedly negligent supervision, indifference or other misconduct. *See* Opp'n at 11. It is true the Master Contract's indemnity provisions do not obligate the school to indemnify the district for the district's own misconduct. But the school's duty to indemnify is independent of its duty to defend. The duty to defend does not "depend on the outcome of the litigation." *Crawford*, 44 Cal. 4th at 558. It "arises out of an indemnity obligation as soon as the litigation commences and regardless of whether the indemnitor is ultimately found negligent." *UDC-Universal Dev., L.P. v. CH2M Hill*, 181 Cal. App. 4th 10, 21–22 (2010).

The district offers another persuasive explanation for why this is so: the allegations in C.R.'s complaint do not put the school at risk of liability for what the district has done. *See* Reply at 4. Rather, the district faces liability, in part for its own alleged failures, but also in part for the school's and its employees' alleged failures. California courts have long held that when the "broad charge" in a third party's complaint "contains within it the potentiality of a judgment . . . , the indemnitor becomes liable to defend," including in non-insurance cases like this one. *Davidson v. Welch*, 270 Cal. App. 2d 220, 234 (1969); *see also, e.g.*, *Promote Mexico, LLC v.*

11

1   *Superior Ct.*, No. B332617, 2024 WL 3248985, at *6–7 (Cal. Ct. App. June 1, 2024)
2   (unpublished[3]) (reaffirming and applying this rule); *Sierra Pac. Properties, Inc. v. Otis Elevator*
3   *Co.*, No. A154578, 2020 WL 429004, at *4–5 (Cal. Ct. App. Jan. 27, 2020) (unpublished), *as*
4   *modified on denial of reh'g* (Feb. 18, 2020) (same).  Therefore, the school could demonstrate it
5   has no duty to defend only by showing C.R.'s claims did not even "potentially give rise to a duty
6   of indemnity" at the time they were tendered.  *City of Bell v. Superior Ct.*, 220 Cal. App. 4th 236,
7   252 (2013).  It has not done so.  The school also could show it had no duty to defend by proving
8   "all claims potentially subject to the contractual indemnity obligation were eliminated."
9   *Crawford*, 44 Cal. 4th at 558 n.7.  Again, it has not.  The "broad charge" in C.R.'s complaint
10  creates the "potentiality" of a judgment against the district and its employees based on their
11  allegedly wrongful failure to protect C.R. while she was at the school.  For that reason, the school
12  had a duty to defend the district after it tendered the claims.

13         The school is similarly mistaken in its argument that the "duty to defend was not
14  triggered" because the district has not been sued for the school's acts or omissions, but rather for
15  its own acts or omissions.  *See* Opp'n at 12.  As noted above, the Master Contract's indemnity
16  provisions are not so limited.  Under these provisions, the school has an obligation to indemnify
17  the district for any losses "arising out of" the Master Contract "to the extent that such loss" was
18  "proximately caused" by the school's or its employees' "negligence, intentional act, or willful act
19  or omission."  Linkert Decl. Ex. 2 at 9.  C.R. alleges the district is liable for abuse that would not
20  have occurred if the school's employees had not been negligent or willfully blind to the alleged
21  abuse.  *See, e.g.*, Compl. ¶¶ 107–11.  These allegations describe losses "arising out of" the Master
22  Contract that were "proximately caused" by "negligence" or an "intentional act" by school
23  employees.

---

[3] Although the California Rules of Court would prohibit the citation of this unpublished decision in a state court, those rules do not apply in federal courts, which may review and consider unpublished appellate decisions for their persuasive (but not precedential) value. *See Nunez by Nunez v. City of San Diego*, 114 F.3d 935, 943 n.4 (9th Cir. 1997); *Inland Concrete Enterprises, Inc. v. Kraft*, 318 F.R.D. 383, 405–06 (C.D. Cal. 2016).

The school pressed another version of the same argument at hearing: it emphasized that the complaint asserts independent legal claims against the school and district. In the school's view, the complaint charges the school and the district with independent liability based on independent statutes under independent legal theories, so the indemnity clause does not come into force. California courts have long rejected the premise underlying this argument. A person who owes a duty to defend "cannot construct a formal fortress of the third party's pleadings and retreat behind its walls." *Gray v. Zurich Ins., Co.*, 65 Cal. 2d 263, 276 (1966). "[C]ourts do not examine only the pleaded word but the potential liability created by the suit." *Id.* As summarized above, setting aside the formal legal theories within the complaint, its allegations create the potential of an indemnified liability, so the school has a duty to defend.

Nor does the potential of independent legal liability relieve a contracting party of its obligation to defend under the contract. The window company had an obligation to defend in *Crawford* despite the claims against the general contractor. *See* 44 Cal. 4th at 427–48 (summarizing allegations). At hearing, the school contended *Crawford* is distinguishable because it was a negligence case. This case, too, was a negligence case at the time the district tendered its defense. *See* Compl. ¶¶ 105–14. But in any event, *Crawford*, like this case, was not just a negligence case. The plaintiffs in *Crawford* also asserted claims of "strict liability, breach of warranty, and breach of contract." 44 Cal. 4th at 428.

Finally, the school infers from the district's self-insurance representations that the District must bear the costs of defending C.R.'s claims against the district and its employees. *See* Opp'n at 12. The language of the Master Contract does not bear this claim out. The self-insurance provisions represent the district's self-insurance complied with state law. They confirm the district's self-insurance covers its employees if they act within the scope of their duties. They eliminate any doubt that if the district is liable under the Master Contract's indemnity provisions, its self-insurance will cover that liability. They do not include a promise to bear all costs.

For these reasons, the court grants the district's motion for partial summary judgment of its fourth crossclaim.

## IV. INSURANCE OBLIGATIONS (CROSSCLAIM 5)

In the district's fifth crossclaim, it alleges the school did not uphold its obligation to purchase insurance covering claims against the district for work under the Master Contract. *See* Crosscl. ¶¶ 31–35. The district asserts this failure was also a breach of the Master Contract. *Id.* To prove this claim, the district ultimately must show (1) a contract was formed, (2) the district did all that was required by the Master Contract (or is excused from doing so), (3) the school breached the contract, and (4) the district suffered damages as a result. *See Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (listing elements of state law claim for breach of contract). The school contests only the third and fourth elements above: it argues there are genuine disputes of fact about whether it breached its obligations and whether the district has suffered damages. *See* Opp'n at 7–10.

The school's contractual obligations are not in doubt. The Master Contract required the school to "maintain in full force and effect" specific types of insurance coverage at "its sole cost and expense." Linkert Decl. Ex. 2 at 7. Commercial general liability insurance is among the required insurance policies. *Id.* The commercial general liability policy must "name the [district] and the Board of Education as named additional insureds." *Id.* at 8. It "may not contain an exclusion for coverage of claims arising from claims for sexual molestation or abuse," but "[i]n the event that [the school's] policy should have an exclusion for sexual molestation or abuse claims, then [the school] shall be required to procure a supplemental policy providing such coverage." *Id.* at 7. The school also must maintain errors and omissions insurance, "including sexual molestation and abuse coverage, unless that coverage is afforded elsewhere in the Commercial General Liability policy." *Id.* at 8.

The relevant claim history is likewise undisputed. After C.R. filed her complaint in this action, the district tendered its defense to the school's insurer. *See* Linkert Decl. Exs. 3–4, ECF No. 67-3. The insurer denied the tender. *Id.* Ex. 5, ECF No. 67-3. It concluded that although the district was an insured under the school's commercial general liability policy, that policy was subject to an exclusion for sexual abuse or molestation that "entirely eliminate[d] any potential for coverage for the C.R. action." *Id.* at 1; *see also id.* at 3–4. The insurer also concluded that the

district did not qualify as an insured under the school's separate coverage for sexual or physical abuse or molestation. *See id.* at 1, 4–5. That coverage also excluded "liability assumed by [the school] under any contract or agreement." *Id.* at 1; *see also id.* at 5.

These undisputed facts show the district and Delgado are entitled to summary judgment on their fifth crossclaim. The Master Contract obligated the school to maintain commercial and general liability coverage without exclusions for sexual molestation or abuse in a policy that listed the district among the named insureds or, alternatively, to procure a supplemental policy with coverage for sexual molestation or abuse. Despite that obligation, the school's commercial and general liability policy had an exclusion for sexual molestation or abuse, and the district was not a named insured in the school's supplemental policy for sexual molestation or abuse.

The school argues the district and Delgado are not entitled to summary judgment because the Master Contract is ambiguous. *See* Opp'n at 9. It does not rely on the text of the contract itself to make this claim, but rather the course of the parties' performance over the years. *See id.* When a party contends an agreement is ambiguous based on evidence other than the words of the contract itself, the court first "provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party." *Winet v. Price*, 4 Cal. App. 4th 1159, 1165 (1992). If the contract is not "'reasonably susceptible' to the interpretation urged," then "the case is over." *S. Cal. Edison Co. v. Superior Court*, 37 Cal. App. 4th 839, 847–48 (1995). But "[i]f in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract." *Winet*, 4 Cal. App. 4th at 1165. Whether a contract is ambiguous is a question of law. *WYDA Assocs. v. Merner*, 42 Cal. App. 4th 1702, 1710 (1996).

The school cites evidence showing it sent copies of its insurance policies to the district for many years without ever receiving any complaints that those policies fell short of what the Master Contract required. *See* District's Resp. Suppl. Stmt. Nos. 31, 40, 41–44, 46, 47, 49. According to the school, this evidence shows the parties actually intended for the Master Contract to require only the policies the school actually purchased: a commercial and general liability insurance

15

policy that excluded sexual abuse or molestation claims from coverage and a supplemental policy that did cover sexual abuse and molestation claims, but only against the school, not the district. *See* Opp'n at 9.

The school's proposed interpretation directly contradicts the Master Contract. As summarized above, the Master Contract unambiguously required the school to maintain a commercial general liability insurance policy that both (1) "name[d] the [district] and the Board of Education as named additional insureds," Linkert Decl. Ex. 2 at 7–8, and (2) made no "exclusion for coverage of claims arising from claims for sexual molestation or abuse," *id.* at 7. The Master Contract did offer an alternative: the school could "procure a supplemental policy providing such coverage" if its commercial and general liability policy had "an exclusion for sexual molestation or abuse claims." *Id.* But if, as the school argues, the alternative supplemental policy could omit the district from the list of named insureds, then there was no reason for the Master Contract to specifically demand that the commercial and general liability policy both (1) name the district as a named additional insured and (2) insure against claims of sexual abuse and molestation. The Master Contract is not "'reasonably susceptible' to the interpretation urged," so the school cannot rely on its extrinsic evidence about the parties' course of performance. *S. Cal. Edison*, 37 Cal. App. 4th at 847–48.

At hearing, the school made a similar argument based on the language of the Master Contract itself. It pointed out that on page 8, the Master Contract provides only that the "Commercial General Insurance and Automobile Liability policy"—not any supplemental policy—"shall name the [district] and the Board of Education as named additional insureds." Linkert Decl. Ex. 2 at 8. This interpretation leads to the same contradiction described in the previous paragraph. That contradiction also undermines the school's argument that the Master Contract requires coverage only for the school's own acts and omissions. *See* Opp'n at 10. If the school were required to insure only itself against claims for sexual abuse and molestation, then the Master Contract would not have demanded both that the district be included as a named insured and that the policy make no exclusion for sexual abuse or molestation claims. The only reasonable interpretation of the disputed insurance provisions is that they require an insurance

16

policy of some kind that both names the district as an additional insured and insures against claims of sexual abuse and molestation. Any other interpretation leads to an unnecessary contradictions, surplusage, or both. Courts avoid interpretations that lead to these results. *See, e.g.*, *In re Tobacco Cases I*, 186 Cal. App. 4th 42, 49 (2010) ("We must give significance to every word of a contract, when possible, and avoid an interpretation that renders a word surplusage.").

The school also appears to contend the district "waived" its rights to object to the school's insurance policies. *See* Opp'n at 2–3, 9–10. It does not explain this argument clearly in its opposition, but its separate statement of facts suggests the district waived its rights when it did not ask the school to make any changes to its policies after it received copies of those policies. *See, e.g.*, Resp. Sep. Stmt. Facts No. 42 ("[The district] never notified [the school] that [its] insurance was not consistent with the contract.").

"Waiver is the intentional relinquishment of a known right after knowledge of the facts." *City of Ukiah v. Fones*, 64 Cal. 2d 104, 107 (1966) (quoting *Roesch v. De Mota*, 24 Cal. 2d 563, 572 (1944)). A waiver can be implied from a person's conduct, but only if that conduct is "manifestly inconsistent with the intention to enforce a known right." *Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.*, 144 Cal. App. 4th 1175, 1191 (2006). "The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and doubtful cases will be decided against a waiver." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 31 (1995) (alteration in *Waller*) (quoting *Ukiah*, 64 Cal. 2d at 107–08).

The school has not cited evidence that could support a waiver defense at trial. Because the district is a legal entity rather than a natural person, and because a waiver can be proven only by conduct manifestly inconsistent with the intention to enforce a known right, the school could succeed only by showing a person with authority to bind the district—such as a "duly authorized agent"—read the school's insurance policies, understood from those policies that the school had procured insurance that fell short of its obligations under the Master Contract, and yet decided to do nothing. *See Savaglio v. Wal-Mart Stores, Inc.*, 149 Cal. App. 4th 588, 600 (2007). The record does not include that evidence. At most the record evidence could prove no one disabused

17

1   the school of its incorrect belief that its policies met the Master Contract's requirements.  *See*
2   Ross Decl. ¶¶ 16–19, 23, 25, ECF No. 72-2.

3   California courts have found waiver only in much more extreme circumstances.  For
4   example, in *Savaglio*, Wal-Mart's counsel had filed several documents on the public court docket,
5   where they were publicly available for years.  *See* 149 Cal. App. 4th at 600.  The attorneys had
6   not followed any of the mandatory procedural rules for filing documents under seal, they did not
7   file a motion to seal, and the trial and appellate courts had issued no sealing orders.  *See id.* at
8   599–600.  The attorneys' conduct was obviously inconsistent with an intent to keep the
9   documents confidential, so Wal-Mart's counsel had waived the company's rights to
10  confidentiality.  *See id.*  The school has not pointed to analogous evidence here.

11  The court grants the district's motion for partial summary judgment on the fifth
12  crossclaim.

13  **V.   CONCLUSION**

14  The motion for partial summary judgment (ECF No. 67) is **granted**.

15  IT IS SO ORDERED.

16  DATED: May 14, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE